FRIAR *v.* DAUSMAN.

1. Attorney and Client—Purchase of Client's Property by Attorney.

Action of defendant mortgagee's attorney in purchasing property from mortgagee after issuance of writ of restitution *held*, not unethical in mortgagor's proceeding to restore a moratorium, where attorney had made unsuccessful efforts to sell the property to others, defendant was desirous of getting his money out of the property as speedily as possible, attorney paid $500 down, agreed to pay balance at rate of $80 a month and made extensive repairs and defendant is not complaining.

2. Mortgages—Moratorium Relief—Discretion of Court.

Denial of extension of moratorium relief to mortgagor *held*, not an abuse of discretion where she had borrowed $3,200 from defendant mortgagee and, although she had received over $5,000 from the property in the last 5 or 6 years, had applied but a very small amount on the mortgage, permitted back taxes, insurance premiums and other charges to accumulate and the building to fall into disrepair and after dispossession lived opposite the premises and saw extensive repairs being made, but remained silent for six months.

3. Same—Moratorium Relief—Supreme Court.

Supreme Court will not reverse the action of a trial judge in granting or refusing to grant a moratorium unless there has been an abuse of discretion.

Appeal from Kent; Perkins (Willis B.), J. Submitted January 7, 1938. (Docket No. 72, Calendar No. 39,836.) Decided April 4, 1938.

Bill by Elizabeth Friar against Samuel Dausman to restrain the issuance of a writ of restitution, and for moratorium relief on a mortgage foreclosure. From order denying petition to set aside writ of restitution, defendant appeals. Affirmed.

*Fred P. Geib,* for plaintiff.

*Earl F. Phelps,* for defendant.

BUTZEL, J.   Plaintiff, a woman of 83 years of age, sought to have restored to her the benefit of a moratorium, which would give her the right to redeem the property involved until November 1, 1938, upon terms and conditions which the court might deem equitable.   On September 24, 1928, the property, consisting of three frame stores with apartments above them on west Bridge street, Grand Rapids, Michigan, was mortgaged by plaintiff to defendant to secure a loan of $3,200.   Defendant brought foreclosure proceedings and the property was bid in by him on March 2, 1935, for $3,488, approximately the amount due on the mortgage at that time.   On February 26, 1936, but a few days before the expiration of the equity of redemption, plaintiff filed a petition for a moratorium, claiming that the property was of the value of $7,000; that two of the three stores had been vacant for the previous five years, and that the apartments on the second floor had only been rented occasionally during the period.   Defendant's answer showed that in addition to the principal and interest due on the mortgage, $926.37 was due for taxes, and that with penalties and insurance premiums, the actual amount due was in the neighborhood of $5,000; that the property had become so run down, due to lack of repairs, that it would cost a considerable sum of money to restore it.   On April 3, 1936, the court granted a moratorium until March 1, 1937, but stipulated that plaintiff was to pay to the clerk of the court on or before April 8, 1936, the sum of $60, and a like sum before the 8th day of each month thereafter, such sums to be paid to defendant, who was ordered to apply $40 of the sum paid each time upon past due taxes and repairs, and the balance of $20 upon the indebtedness.   The court further ordered that upon default of plaintiff in making prompt payment, the clerk of the court, upon request of the defendant or

his attorneys, should file a certificate setting forth the default, in which event the moratorium should terminate and a writ of dispossession issue without the further order of the court.

Plaintiff made three payments of $60 to the clerk, but failed to make any payment on the due date of the 8th of July, 1936. The county clerk on July 22, 1936, filed a certificate as to the arrears, and two days later, a writ of restitution was signed by the circuit judge. About a month thereafter, the daughter of plaintiff filed a petition in her behalf to set aside the writ of restitution. She alleged that she had just taken over the business affairs of her aged mother, and that a mistake had been made; that she was not aware of the fact that the $60 payment due on July 8, 1936, was unpaid, and it was her belief that defendant had received a check from the clerk of the court for the July payment. She further stated that plaintiff had three offers for the property, one being for the sum of $6,200. Testimony of plaintiff's daughter was taken in open court. The trial judge refused to reinstate the moratorium. However, no formal order denying the petition was made or entered until March 5, 1937.

On February 27, 1937, plaintiff was granted leave to file a petition for a rehearing and the moratorium was extended until a hearing could be had on the merits of the petition, but without prejudice to the rights of any party. On the same date, by general order of the circuit court for Kent county, the moratorium was extended to November 1, 1938, in all cases where it was still in force, in accordance with the act of the legislature (Act No. 1, Pub. Acts 1937), but without prejudice to the rights of parties affected thereby. On March 12, 1937, plaintiff, by her daughter as attorney in fact, filed a petition to bring in additional parties-defendant, to set aside the writ of

restitution, and for the continuation of the moratorium. She alleged under oath that immediately after the issuance of the writ of restitution, she had sent a check for $60 to the county clerk who forwarded the amount to defendant; that defendant at the time was also in default because instead of applying $40 each month toward the payment of taxes and repairs, he had retained the entire amounts recovered during the three months, in which payment had been made, and thus violated the order of the court; that at the time of dispossession, tenants were paying plaintiff $75 per month; that shortly thereafter, Mr. Phelps, attorney for defendant, purchased the property, and made repairs, a part of which sum was borne by tenants; that the rents have been increased to $160 per month, and that she did not know of these facts when she presented her previous petition August 26, 1936. Defendant lived at Saranac, Michigan.

Mr. Phelps, on the other hand, in his own affidavit, stated that when default was made in the payment due July 8, 1936, he twice notified plaintiff's attorney before asking for the writ of restitution, which the trial judge signed in the presence of plaintiff's attorney. Defendant testified that when he received the $60 from the clerk of the court, he assumed that his attorney's efforts to declare the moratorium at an end had been unsuccessful, and that when he informed his attorney of the receipt of the $60, it was immediately returned in currency to the county clerk, who on September 23d returned it to plaintiff and she accepted it.

Defendant excuses his failure to apply the $120, being $40 from each of three payments made to him, on the ground that he resided some distance from Grand Rapids and was waiting until he would have a larger sum for taxes and repairs. It is true that he could have paid some of the back taxes in full with

the amount he had on hand. Defendant's attorney is assailed for having purchased the property because of his professional relations with defendant. He showed, however, that he had made unsuccessful efforts to sell the property to others, that defendant was desirous of getting his money out of the property as speedily as possible, that he not only paid $500 down, and agreed to pay the balance at $80 a month, but made extensive repairs so as to improve defendant's security. About $3,000 has been spent on repairs to date. There was nothing unethical about the actions of defendant's counsel. He was fair and aboveboard and the transaction met with the approval of his client and was in accordance with his wishes. Defendant makes no complaint, nor has he any reason to.

Although plaintiff has received over $5,000 from the property since 1932, she has applied but a very small amount on the mortgage indebtedness. She permitted back taxes, insurance premiums and other charges to accumulate and the building to fall into disrepair. After being dispossessed, she lived opposite the premises and saw the extensive repairs being made, but remained silent for six months. While her age must have been taken into consideration by the trial judge, he also saw that she was represented by an attorney and that her daughter was helping her. We have frequently stated that we will not reverse the action of a trial judge in granting or refusing to grant a moratorium, unless there has been an abuse of discretion. We find none in the instant case.

For this reason, the order is affirmed, with costs to defendant.

Wiest, C. J., and Bushnell, Sharpe, Potter, Chandler, and North, JJ., concurred. McAllister, J., did not sit.